UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.

LAURA M. SCALONE-FINTON,
      Plaintiff

v.

FALMOUTH PUBLIC SCHOOLS,
MARY GANS, ALAN KAZARIAN
DR. JOANY SANTA,
      Defendants

**COMPLAINT AND JURY DEMAND**

<u>Introduction</u>

1. Plaintiff brings this action for violation of her rights arising under §504 of the Rehabilitation Act of 1973 (29 U.S.C. §794), the First Amendment under 42 U.S.C. §1983, the Americans with Disabilities Act (42 U.S.C. §12101 et seq.), Massachusetts General Laws chapter 151B, and wrongful termination in violation of public policy.

<u>Jurisdiction and Venue</u>

2. The District Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because Plaintiff's claim involves federal questions arising under §504 of the Rehabilitation Act of 1973 (29 U.S.C. §794), the Americans with Disabilities Act (42 U.S.C. §12101 et seq.), [and 42 U.S.C. §1983].

3. Venue of this action lies in this judicial district under 28 U.S.C. § 1391(b) because Plaintiff's claim arises out of acts occurring in this district.

Parties

4. Plaintiff, Laura M. Scalone-Finton ("Plaintiff"), resides in Pocasset, Barnstable County, Massachusetts.

5. Defendant Falmouth Public Schools, is a Massachusetts public school system with a main office located at 340 Teaticket Highway, Falmouth, Barnstable County, Massachusetts.

6. Defendant Mary Gans is the Principal of Falmouth High School and Plaintiff's evaluator for the purposes of the Teacher Evaluation System.

7. Defendant Alan Kazarian was the Falmouth High School Director of Guidance and became Plaintiff's Department Head and direct supervisor effective January 2019.

8. Defendant Dr. Joany Santa is the Director of Human Resources for Falmouth Public Schools.

Facts

9. Plaintiff was an employee of Falmouth Public Schools beginning on or about September 2007, working as a School Adjustment Counselor in Falmouth High School.

10. As a School Adjustment Counselor, Plaintiff provided short- and long-term counseling to students, addressed their social emotional, familial and mental health issues, provided direct services based on students' Individualized Education Plans ("IEPs"), and performed other responsibilities meant to reduce students' barriers to learning.

11. Plaintiff was the senior, most skilled counselor, and the only one at Falmouth High School with a professional state license. As a result, she was referred the students with the most severe emotional and mental health difficulties.  This included many minority students, students with histories of chronic trauma, students suffering from mental health crises, and students dealing with family addiction.

12. Her work performance was excellent, as evidenced by her past performance evaluations and other commendations.

13. While employed by Falmouth Public Schools, Plaintiff suffered from serious medical conditions, including anxiety, PTSD and GERD.

14. Plaintiff's medical conditions required that she see doctors for each ailment, as well as a therapist, be prescribed several medications to treat the ailments, undergo a surgical procedure and continue to routinely see her providers for follow up and medical care.

15. Defendants were aware of Plaintiff's medical conditions.

16. At the beginning of school year 2017/2018, Plaintiff requested to reduce her hours to 80% for the purposes of self care, as allowed in the collective bargaining agreement. Falmouth Public Schools granted the request.

17. After granting the request and reducing Plaintiff's compensation by 20%, Falmouth Public Schools forced her to cover the duties of an absent school adjustment counselor throughout school years 2017/2018 and most of 2018/2019 in addition to her own duties, placing her under severe stress.

18. During this 2 year period of time of working both 80% of her position and covering her absent colleague's duties, Plaintiff repeatedly reported to Principal Gans, other Falmouth Public Schools administrators, and her union that she was being traumatized by the high volume of work, and that she was experiencing symptoms of restlessness, anxiety, worry, perseverating thoughts, isolation and sleeplessness.

19. During this 2 year period of time of working both 80% of her position and covering her absent colleague's duties, Plaintiff reported to Falmouth Public Schools that it did not have an effective system in place to manage cases of students in crisis or with mental

health issues.

20. During this 2 year period of time of working both 80% of her position and covering her absent colleague's duties, Plaintiff reported to Falmouth Public Schools that her absent colleague's special education students were not receiving required services.

21. Plaintiff repeatedly requested that a substitute be hired or that the other adjustment counselor in the building be made available to share in her combined workload. Principal Gans refused these requests.

22. In the Fall of 2018, Mr. Kazarian began calling Plaintiff or stopping by her office for what he called, "Wellness Checks". In these conversations, he would ask Plaintiff how she was doing mentally. When she informed him that Principal Gans refused to hire a substitute or otherwise lighten her workload and ensure that all students were receiving services, he would minimize her experiences, invalidate her concerns, and accuse her of letting the work "rent too much space" in her head.

23. Mr. Kazarian also directed Plaintiff to take daily "mental health walks" with his secretary, and to sign out in the log book prior to the walks.

24. Plaintiff brought up her work conditions to the Director of Student Services, Dr. Joan Woodward, in a district wide Adjustment Counselor meeting in the Fall of 2018, noting that she was often unable to take my prep periods and lunch breaks.

25. After this meeting, Dr. Woodward called Principal Gans to ask why Plaintiff was unable to take prep periods and lunches. Principal Gans provided the "mental health walks" sign out log book entries to falsely claim that Plaintiff was able to take her prep periods and lunch breaks and discredit her.

26. In January 2019, Mr. Kazarian became Plaintiff's direct supervisor. After becoming her

supervisor, he made disparaging comments about Plaintiff's mental health, calling her overly emotional, burnt out, overthinking and perseverating.  He told her to "get her medications adjusted."

27. Plaintiff's workload continued growing throughout the 2018/2019 school year.

28. On or about January 2019, Plaintiff filed a grievance through her union because of the severe stress she was suffering while she covered the duties of the absent school adjustment counselor in addition to her own duties.  As part of her grievance, she also requested the opening of a Wellness Center to address the unmet needs of underserved disabled and minority student populations.

29. After an informal grievance meeting, Principal Gans hired a part time substitute 2 days a week to cover the Special Education students that were not receiving their services. Plaintiff was still expected to cover all four grades at Falmouth High School, her own IEP caseload, court dates, and any students in crisis that arose suddenly.

30. In March 2019, Plaintiff's grievance went on to Level 2 (Superintendent's level) because a mutual agreement could not be reached with Principal Gans.

31. Plaintiff's grievance was resolved at Level 2, with an agreement that a full time substitute would be hired in April 2019.  In addition, her office was to be temporarily moved to the Guidance Suite until the 2019/2020 school year, at which time Plaintiff would be permitted to open the Wellness Center.

32. Following her grievance and her longstanding advocacy for disabled, minority, and other disadvantaged students in Falmouth High School, Plaintiff was harassed and subjected to a hostile work environment by Defendants.

33. Principal Gans barely spoke to Plaintiff and gave all of the new referrals to the substitute.

34. Principal Gans refused to open Plaintiff's proposed Wellness Center, while allowing resources to flow to the Bridge program, which disproportionately serves a few white students from economically well-off families.  Students from underserved disabled and minority populations are determined by Falmouth Public Schools to "not be a good fit" for the Bridge program and its resources.

35. Mr. Kazarian informed Plaintiff that Principal Gans "hated" her and would "try to get back at" her.  However, when she discussed Principal Gans' actions with him, Mr. Kazarian told Plaintiff that she was jealous, resistant to change, and repeatedly told her to stop causing problems.

36. In the Spring of 2019, Principal Gans told Plaintiff the English department was upset with Plaintiff because Plaintiff advocated for the students' needs during the New England Association of Schools and Colleges ("NEASC") collaborative visit.  Principal Gans blamed Plaintiff for informing traumatized students that they could have alternative assignments in English if the text was too triggering.

37. The April 2019 NEASC report found that Falmouth High School was failing to meet the needs of certain student subgroups, noting that there was "an increasing group of students struggling with cultural differences, language and learning issues, as well as issues of trauma who are not having a positive experience in school.  Student meetings indicated that these students do not feel they fit the FHS model and that they are not supported."

38. In May 2019, during a Coordination meeting, Plaintiff advocated for a student who was diagnosed with mental illness and had a history of trauma and hospitalization.  This student, who was homeless and unaccompanied, wished to attend the prom.  Principal Gans agreed that if the student attended school that Friday, she could go to the prom.

The student did attend school that Friday and Plaintiff helped arrange for formal outfits for the student and her date.  Principal Gans then said the student would not be permitted to attend the prom, which was devastating for the student.

39. On August 20, 2019, Plaintiff met with Superintendent Lori Duerr to discuss the inequities for the students she serviced and reviewed data that supported these observations. Plaintiff also shared with Superintendent Duerr the harassment and discrimination she had been enduring by Principal Gans and Mr. Kazarian. Superintendent Duerr suggested that Plaintiff file a harassment discrimination claim against Mr. Kazarian. Plaintiff declined at that time as she believed he was acting under the orders of Principal Gans.

40. At the beginning of the 2019/2020 school year, the classroom in which Plaintiff ran groups for her students was taken away without a replacement. Plaintiff emailed Mr. Kazarian, Principal Gans, and other administrators, but was told there was no space for her student groups.  Meanwhile, the Bridge program was expanding in physical space and staff.  Mr. Kazarian told Plaintiff she was making a big deal over nothing and being paranoid.

41. In a Guidance Department meeting in August 2019, Mr. Kazarian told the guidance counselors, regarding the lunch groups they ran for students, that they should send the students back to the cafeteria.   When Plaintiff informed Mr. Kazarian that alternative lunch groups were part of the Department of Education and Secondary Education's (DESE) bullying prevention and intervention programs, he rolled his eyes at Plaintiff.

42. A few days later, Plaintiff asked Mr. Kazarian if there had been any follow up about the lunch room assignment. He began to scream at Plaintiff, wave his hands in the air, roll his

eyes and said, "your students are on the bottom of the priority list, no one cares about your students."

43. In September 2019 Plaintiff was assigned a new student, A. O., who struggled with extreme anxiety and panic.  Despite her best clinical efforts and extensive collaboration with her parents and providers to assist her in the transition to her new school, Plaintiff could not deescalate her to a functional place and was spending the entire day with her. Although Plantiff asked multiple times for help with this student's needs, Defendants refused to provide additional direct support.

44. The harassment by Defendants escalated in September 2019, with several incidents.

45. On September 12, 2019, Principal Gans openly scolded Plaintiff in front of colleagues during a coordination meeting, falsely accusing her of discussing the Bridge program with student A.O.'s family without speaking to an administrator first.  Plaintiff had in fact spoken to Mr. Karzarian first, but he did not correct Principal Gans and she continued her public reprimand of Plaintiff.

46. On September 17, 2019, at the Guidance Department Meeting, Mr. Karzarian announced that everyone would be working on the department team goal together.  When Plaintiff asked if she would be working on her separate team goal instead, Mr. Karzarian raised his voice and spoke to her in a hostile manner, insisting that she would have to work on the department team goal instead of her own team goal.  His order was a violation of district policy.

47. Immediately following the Guidance Department Meeting, a separate School Adjustment Counselor meeting was held.  Mr. Kazarian asked Plaintiff questions about Risk Assessment forms.  When she answered, he raised his voice and began yelling at her,

rolling his eyes and waving his hands in the air.  He continued to fire questions at Plaintiff and react in a hostile manner when she answered during the meeting.

48. On the afternoon of September 18, 2019, Mr. Kazarian entered Plaintiff's office and asked her intern to leave the room.  After she left, his demeanor changed and he became threatening and aggressive.  He blocked the door with his hand on the door handle.  He told Plaintiff that her negative attitude in department meetings would stop now.  He said he would put her on a plan to improve her behavior and her attitude and actions would be documented.  He said she would have to show improvement of her behavior.  He claimed her colleagues felt uncomfortable around me.  Plaintiff asked him twice to leave but he ignored her requests.  By the time he left, Plaintiff was extremely distraught.

49. Plaintiff then notified her union that she was being harassed and suffered from extreme stress, panic and fear as a result.

50. On September 19, 2019, in the weekly Coordination meeting, Mr. Kazarian skipped over Plaintiff's student, A. O., on the agenda until Principal Gans entered the meeting. Mr. Kazarian then revealed that home and hospital tutoring information had been provided to the student's parents. Principal Gans became visibly upset and asked why these had been provided to the parents.  Mr. Kazarian blamed Plaintiff for providing the same.  Principal Gans reprimanded Plaintiff in front of her colleagues, accusing her of having conversations with parents without administrator approval. When Plaintiff stated that she acted with Mr. Kazarian's approval, he denied it.

51. Following this meeting, Plaintiff met with union representatives.  She was distraught and repeatedly indicated that she was being retaliated against, set up for insubordination and termination.

52. The union arranged for a meeting with the Falmouth Public Schools Human Resources Director, Dr. Joany Santa and advised Plaintiff to call out of work on sick leave.

53. At the meeting with Dr. Santa, Plaintiff gave a statement.  Dr. Santa asked inappropriate and demeaning questions, including:

    - whether Plaintiff had a trauma history,
    - if Plaintiff saw a doctor and did the doctor tell her to stay out of work,
    - was Kazarian directing his questions to her because she was acting as a spokesperson,
    - did Kazarian stand in front of the door other times he came to her office,
    - whether Plaintiff's persistence annoyed Kazarian and that's why he acted this way,
    - whether their relationship was friendly, like that of an older brother,
    - was Kazarian just "joking," and
    - whether Plaintiff was carrying resentment from last year's grievance.

54. Plaintiff submitted a doctor's note to Falmouth Public Schools that stated that the hostile work environment was contributing to her escalating symptoms. She asked for a transfer multiple times as a reasonable accommodation to the symptoms she was experiencing to safely and effectively continue to do her job.

55. Falmouth Public Schools denied Plaintiff's requests for a transfer.

56. On or about October 2019, Plaintiff filed an internal complaint with Falmouth Public Schools regarding the harassment and hostile work environment.

57. Falmouth Public Schools then purported to investigate her claims.

58. During the purported investigation, Plaintiff was reassigned to an empty room in the Morse Pond School.  The principal of the school would not permit Plaintiff to assist with counseling at that school due to harm to her reputation caused by the Defendants.

59. Every day, Plaintiff was forced to sign in upon arrival and out upon departure of the Morse Pond School as if she were a guest, not a reassigned employee.

60.  During the purported investigation, Dr. Santa sent an outdated Harassment and Discrimination Policy to Plaintiff and directed that she follow it. The outdated policy stated that Plaintiff had the right to have the Affirmative Action Officer represent her in the proceedings, but the Town of Falmouth no longer filled this position.

61. Dr. Santa sent Plaintiff to Falmouth High School to pick up materials, assuring her that Principal Gans and Mr. Kazarian would not be present. When Plaintiff pulled into the parking lot and saw their vehicles, she suffered a panic attack.  Dr. Santa later blamed Plaintiff for this incident.

62. Falmouth Public Schools concluded at the end of its purported investigation that Mr. Kazarian would need to be retrained by Principal Gans and that Plaintiff needed EAP sessions.  No actions were taken against Principal Gans.  In addition, Dr. Santa denied Plaintiff a workplace violence plan or other similar plan, despite Mr. Kazarian's threatening behavior toward her.  Plaintiff was also denied a transfer as a reasonable accommodation for her medical conditions.

63. Plaintiff appealed the outcome of the internal investigation.

64. Superintendent Duerr denied Plaintiff's appeal of the internal investigation.

65. As a result of the harassment, hostile work environment, and refusal to accommodate Plaintiff's medical needs, her anxiety symptoms were exacerbated and she was diagnosed with post traumatic stress disorder.

66. On June 19, 2020, Plaintiff's medical provider provided a letter noting that, due to her anxiety and post traumatic stress disorder, Plaintiff would be unable to enter her workplace or interact with her supervisors.

67. Falmouth Public Schools refused to accommodate Plaintiff and insisted that she return to Falmouth High School and interact with Principal Gans and Mr. Kazarian.

68. Plaintiff remained on medical leave until October 16, 2020, when Falmouth Public Schools removed her from its payroll.

69. The Defendants' conduct in this matter was extreme and outrageous.

Count I: Violation of Rehabilitation Act §504 by Defendant Falmouth Public Schools

70. The Plaintiff hereby incorporates by reference Paragraphs 1 through 69 above herein.

71. Defendant Falmouth Public Schools is a recipient of federal funds subject to §504 of the Rehabilitation Act.

72. Plaintiff was employed by Falmouth Public Schools as a School Adjustment Counselor and in the course of her duties, provided services to students with disabilities.

73. Plaintiff's students with disabilities were the beneficiaries of federal funding subject to §504 of the Rehabilitation Act and Plaintiff was within the zone of interest of the Act's requirements for the benefit of the disabled students.

74. As described above, Falmouth Public Schools intentionally did not provide Plaintiff and her disabled students adequate services and other support, such that Plaintiff was unable to reasonably provide services to disabled students in a non-discriminatory manner.

75. As described above, Plaintiff reported to her supervisors and other administrators at Falmouth Public Schools that her disabled students were not receiving appropriate services and support at various times.

76. In response to Plaintiff's reports, Falmouth Public Schools retaliated against her by its actions described above, which ultimately resulted in the termination of Plaintiff's employment on October 16, 2020.

77. As a result of Falmouth Public Schools' discriminatory and retaliatory actions, Plaintiff is entitled to injunctive and other equitable relief, including but not limited to reinstatement to her position.

78. As a direct and proximate result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, and other losses including emotional distress, mental suffering, and harm to her professional reputation.

WHEREFORE, the Plaintiff demands judgment in her favor and against the Defendant for full and substantial damages, plus attorney fees, interest and costs.

Count II: Violation of First Amendment under 42 U.S.C. §1983

79. The Plaintiff hereby incorporates by reference Paragraphs 1 through 78 above herein.

80. The actions of Defendants Falmouth Public Schools, Mary Gans, Alan Kazarian and Dr. Joany Santa were done under color of state law.

81. As described above, Plaintiff participated in meetings in which she engaged in written and oral reports of student needs to other participants, including but not limited to Falmouth Public Schools administrators and employees, student's parents, and the NEASC.

82. Plaintiff's written and oral reports of student needs were protected under her right to free speech under the First Amended to the United States Constitution.

83. As described above, Defendants attempted to restrain Plaintiff's speech and retaliated against Plaintiff.

84. As a direct and proximate result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, and other losses including emotional distress, mental suffering, and harm to her professional reputation.

WHEREFORE, the Plaintiff demands judgment in her favor and against the Defendants for full and substantial damages, including both compensatory and punitive damages, plus attorney fees, interest and costs.

Count III: Violation of the Americans With Disabilities Act

85. The Plaintiff hereby incorporates by reference Paragraphs 1 through 84 above herein.

86. As described above, Plaintiff suffers from disabilities within the meaning of the Americans with Disabilities Act.

87. Through her employment as a School Adjustment Counselor, Plaintiff advocated for students with disabilities and otherwise opposed practices made unlawful by the Americans with Disabilities Act.

88. Due to her employment as a School Adjustment Counselor, Plaintiff was associated with disabled and minority students by Defendants Falmouth Public Schools, Mary Gans, Alan Kazarian and Dr. Joany Santa.

89. As described above, Defendants Falmouth Public Schools, Mary Gans, Alan Kazarian and Dr. Joany Santa discriminated against Plaintiff and subjected Plaintiff to a hostile work environment because of her disabilities.

90. As described above, Defendants Falmouth Public Schools, Mary Gans, Alan Kazarian and Dr. Joany Santa discriminated against Plaintiff and subjected Plaintiff to a hostile work environment because of her association with disabled and minority students.

91. As described above, Defendants Falmouth Public Schools, Mary Gans, Alan Kazarian and Dr. Joany Santa retaliated against Plaintiff and subjected Plaintiff to a hostile work environment because of her advocacy for disabled and minority students and her opposition to practices made unlawful by the Americans with Disabilities Act.

92. As a direct and proximate result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, and other losses including emotional distress, mental suffering, and harm to her professional reputation.

WHEREFORE, the Plaintiff demands judgment in her favor and against the Defendants for full and substantial damages, including both compensatory and punitive damages, plus attorney fees, interest and costs.

Count IV: Violation of Massachusetts General Laws c. 151B §4(16) (Disability)

93. The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above herein.

94. Massachusetts law provides that, pursuant to M.G.L. c. 151B §4(16), it is unlawful for an employer, personally or through its agents, to dismiss from employment, refuse to hire or rehire, or otherwise discriminate against a person because of her disability.

95. As described above, Plaintiff suffers from disabilities within the meaning of M.G.L. c. 151B §4(16).

96. As described above, due to her employment as a School Adjustment Counselor, Plaintiff was associated with disabled and minority students by Defendants Falmouth Public Schools, Mary Gans, Alan Kazarian and Dr. Joany Santa.

97. Defendants discriminated against Plaintiff because of her disability in violation of M.G.L. c. 151B through the actions described above, including but not limited to creating a hostile work environment, failing to accommodate Plaintiff, terminating her employment, and otherwise discriminating against her on the basis of disability.

98. Defendants discriminated against Plaintiff because of her association with disabled and minority students in violation of M.G.L. c. 151B through the actions described above,

including but not limited to creating a hostile work environment, terminating her employment, and otherwise discriminating against her.

99. As a direct and proximate result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, and other losses including emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment in her favor and against the Defendants for full and substantial damages, including both compensatory and punitive damages, plus attorney fees, interest and costs.

Count V: Violation of Massachusetts General Laws c. 151B §4(4) (Retaliation)

100.   The Plaintiff hereby incorporates by reference Paragraphs 1 through 99 above herein.

101.   Massachusetts law provides that, pursuant to M.G.L. c. 151B §4(4), it is unlawful for an employer to discharge, expel or otherwise discriminate against any person because she has opposed any practices forbidden under c. 151B.

102.   Plaintiff engaged in protected activity under M.G.L. c. 151B through her employment as a School Adjustment Counselor, by advocating for minority students and students with disabilities and otherwise opposed practices made unlawful under M.G.L. c. 151B.

103.   Defendants Falmouth Public Schools, Mary Gans, Alan Kazarian and Dr. Joany Santa retaliated against Plaintiff for her exercise of her legal rights under M.G.L. c. 151B through the actions described above, creating a hostile work environment, terminating her employment, and otherwise retaliating against her.

104.   As a direct and proximate result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, and other losses including emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment in her favor and against the Defendants for full and substantial damages, including both compensatory and punitive damages, plus attorney fees, interest and costs.

Count VI:  Wrongful Termination in Violation of Public Policy Against Defendant Falmouth Public Schools

105.   The Plaintiff hereby incorporates by reference Paragraphs 1 through 104 above herein.

106.   Through her employment as a School Adjustment Counselor, Plaintiff advocated for minority students and students with disabilities and opposed discriminatory practices against students, as described above.

107.   Plaintiff reasonably and in good faith believed her conduct was protected by public policy, including the public policy embodied in M.G.L. c. 151B.

108.   Defendant Falmouth Public Schools terminated Plaintiff because she advocated for minority students and students with disabilities and opposed discriminatory practices against students.

109.   Defendant Falmouth Public Schools' termination of Plaintiff was in violation of a valid public policy.

WHEREFORE, the Plaintiff demands judgment in her favor and against the Defendant for full and substantial damages, plus attorney fees, interest and costs, and that the Plaintiff shall have such other and further relief as the Court shall deem just and proper.

**The Plaintiff requests a jury trial in this matter.**

                                        LAURA M. SCALONE-FINTON,
                                        By her attorney,

                                        /s/Gigi D. Tierney
                                        _____
                                        Scott W. Lang, Esq. BBO#285720
                                        Gigi D. Tierney, Esq. BBO#655128
                                        Lang, Xifaras & Bullard
                                        115 Orchard Street
                                        New Bedford, MA 02740
                                        (508) 992-1270

Dated: November 4, 2021